UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERI HOLBEN,

        Plaintiff,                                                  Hon. Janet T. Neff

v.                                                               Case No. 1:10-CV-567

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

On May 30, 2002, ALJ W. Baldwin Ogden found that Plaintiff was disabled beginning May 2, 2000, due "intractable and debilitating headache pain." (Tr. 35-38). On October 10, 2006, a Social Security Administration Disability Hearing Officer determined that Plaintiff was no longer disabled. (Tr. 66-76, 78-89). Plaintiff subsequently requested a hearing before an Administrative Law Judge (ALJ). On June 20, 2007, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 312-51). In a written decision dated September 23, 2008, the ALJ determined that Plaintiff's disability ceased as of December 1, 2005. (Tr. 17-26). As of the date her benefits were terminated, Plaintiff was a 48 year old high school graduate who had worked previously as a cook, lunchroom aide, cashier, and deli clerk. (Tr. 26-28, 316-18). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-12). Plaintiff initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On September 28, 2004, Plaintiff was examined by Dr. Timothy Thoits regarding her migraine headaches. (Tr. 214). Plaintiff reported that her "last treatment went well." (Tr. 214). Specifically, Plaintiff reported that she "had one headache over the fourth of July weekend," but "has not had any bad headaches since then." (Tr. 214). Plaintiff reported that "Motrin and sleep" helped her condition. (Tr. 214). The doctor noted that Plaintiff's "neurological exam was unchanged." (Tr. 214). Plaintiff received another Botox treatment. (Tr. 214).

On December 28, 2004, Plaintiff was examined by Dr. Thoits. (Tr. 213). Plaintiff reported that "her last Botox treatment went very well" and that "she has only had headaches over the past couple of days." (Tr. 213). Plaintiff received another Botox treatment. (Tr. 213).

On March 29, 2005, Plaintiff was examined by Dr. Thoits. (Tr. 212). Plaintiff reported that she "had a really bad migraine" on February 11, 2005, but "other than that she has not had any bad headaches since her last treatment." (Tr. 212). Plaintiff was given another Botox treatment. (Tr. 212). Plaintiff reported to the doctor that she "is not sure that she needs continued treatment with Botox as she has been doing so well." (Tr. 212).

On August 17, 2005, Plaintiff was examined by Dr. Thoits. (Tr. 211). Plaintiff reported that her last Botox treatment "worked very well." (Tr. 211). Specifically Plaintiff reported that she experienced no headaches in March, April or May, and only "very mild" headaches in June, July and August, which were treated with ibuprofen or Midrin. (Tr. 211). Plaintiff was administered another Botox treatment. (Tr. 211).

On October 18, 2005, Plaintiff completed a report regarding her activities. (Tr. 155-62). Plaintiff reported that she cares for her children, prepares meals, washes laundry, cares for her

dog, shops, performs "minor" yard work, watches television, knits, talks on the telephone, performs crafts and "light therapeutic" gardening. (Tr. 155-59).

On November 21, 2005, Plaintiff was examined by Dr. Thoits. (Tr. 210). Plaintiff reported that her last Botox treatment "went very well" and that she "has only had some neck pain in the last week." (Tr. 210). Plaintiff also reported that her arms were "heavy and tired" after "raking her lawn over the weekend." (Tr. 210). Plaintiff was given another Botox treatment. (Tr. 210).

On July 7, 2006, Plaintiff underwent a "laparoscopic sigmoid colectomy." (Tr. 247). Plaintiff "did well" postoperatively and "went home within a week tolerating a general diet and having bowel movements and overall really no difficulty." (Tr. 247). The results of an August 1, 2006 abdominal examination were unremarkable. (Tr. 247). On September 8, 2006, Plaintiff reported that "one week postoperatively she was doing so well she went ahead and went jet skiing." (Tr. 246). On September 20, 2006, Plaintiff participated in a CT scan of her abdomen and pelvis the results of which were unremarkable. (Tr. 259).

On October 6, 2006, Plaintiff reported to her surgeon that "she does have some right upper quadrant abdominal pain from time to time," but "that she has been laying off of fatty foods and taking a lot of fiber which have helped her a lot." (Tr. 245). Plaintiff reported that "currently she is eating fine and having good bowel movements." (Tr. 245). The results of an abdominal examination were unremarkable. (Tr. 245).

Plaintiff was examined by Dr. Thoits that same day. (Tr. 234). The doctor noted that he had not examined Plaintiff "in almost a year," as "she has received Botox with a positive response." (Tr. 234). Plaintiff received another Botox treatment. (Tr. 234). Three days later, Dr.

Thoits reported that Plaintiff was unable to "work on a regular basis" because "she continues to have frequent headaches." (Tr. 232). The doctor also reported that Plaintiff's "headaches have not responded well to medical management" and that Plaintiff "does not respond well to any treatment." (Tr. 232-33).

On April 28, 2007, Plaintiff was examined by Dr. Thoits. (Tr. 240). Plaintiff reported that she was experiencing "neck pain, migraines and daily headaches." (Tr. 240). The doctor noted that "Botox helped [Plaintiff's headaches], but she can't afford it and her insurance company will not cover it." (Tr. 240). The doctor suggested that Plaintiff be prescribed Cymbalta to treat her headaches. (Tr. 240).

On May 17, 2007, Dr. Thoits again reported that Plaintiff was unable to "work on a regular basis." (Tr. 290). The doctor stated that Plaintiff's "headaches have not responded well to medical management and we have never been able to get her comfortable without pain for years." (Tr. 290).

At the Administrative Hearing, Plaintiff testified that she was not experiencing difficulty regarding her previous abdominal impairments and was not taking any medication for such. (Tr. 319-20). When asked about a reference to "carpal tunnel kind of symptoms in [her] wrist," Plaintiff indicated that she was no longer experiencing any such problems. (Tr. 320-21). Plaintiff reported that she was presently taking medication to treat depression but that she was not participating in counseling. (Tr. 321-22). Plaintiff also reported that she was taking medication to treat anxiety. (Tr. 328). With respect to her headaches, Plaintiff reported that she experiences "throbbing and aching" headaches everyday that cause her to experience crying spells and blurry

vision. (Tr. 334-39). Plaintiff reported that as a result she is unable to perform activities such as washing laundry, cleaning the house, or preparing meals. (Tr. 336).

## **ANALYSIS OF THE ALJ'S DECISION**

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. § 423(f). Termination of benefits must be supported, however, by substantial evidence that (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1)(A)-(B); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made. *See* 20 C.F.R. §§ 404.1594, 416.994. If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. The steps of this sequential process are as follows:

(1) Is the individual engaging in substantial gainful activity;

(2) Does the individual have an impairment or combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;

(3) Has the individual experienced a medical improvement;

(4) Is the improvement related to the individual's ability to perform work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);

  (5)  If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;

  (6)  Does the individual suffer from a severe impairment or combination of impairments;

  (7)  Can the individual perform his past relevant work;

  (8)  Can the individual perform other work;[1]

*Id.*

Furthermore, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip*, 25 F.3d at 286. Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.*

ALJ Prothro determined that as of May 30, 2002, the date of ALJ Ogden's decision that Plaintiff was disabled, Plaintiff suffered from "daily headaches" that precluded her from working. (Tr. 18-19). ALJ Prothro (hereinafter "the ALJ") determined that as of December 1, 2005, Plaintiff had experienced a "medical improvement" in her condition. (Tr. 19). The ALJ found that Plaintiff's improvement was related to her ability to work as such resulted in an increase in her residual functional capacity. (Tr. 21). Specifically, the ALJ determined that as of December 1, 2005, Plaintiff suffered from headaches and a history of diverticulosis, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part

---

[1] While not expressly stated in the regulations, it is clear that "other" work refers to work which exists in significant numbers. *See*, *e.g.*, *Mote v. Shalala*, 1995 WL 358636 at *12 (N.D.Ind., May 12, 1995).

404, Subpart P, Appendix 1. (Tr. 19). The ALJ concluded that despite her impairments, as of December 1, 2005, Plaintiff retained the ability to perform her past relevant work as a deli clerk. (Tr. 19-26). Accordingly, the ALJ concluded that Plaintiff was no longer disabled as defined by the Social Security Act.

        a.     The ALJ Properly Assessed the Medical Evidence

As noted above, on two occasions Dr. Thoits expressed the opinion that Plaintiff was unable to "work on a regular basis." Plaintiff asserts a single issue on appeal, namely that the ALJ failed to accord sufficient weight to Dr. Thoits' opinion. Plaintiff asserts that because Dr. Thoits was her treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ analyzed Dr. Thoits' opinion and assigned it less than controlling weight. (Tr. 24). In support of this conclusion, the ALJ observed that the doctor's opinion was contradicted by his contemporaneous treatment notes, which reveal that Plaintiff's headaches were well controlled with medication and other conservative measures. (Tr. 24). The ALJ further observed that Dr. Thoits' opinion was contradicted by Plaintiff's reported activities. (Tr. 24). The ALJ's assessment in this regard is supported by substantial evidence as detailed above. Specifically, the medical evidence reveals that: (1) Plaintiff's headaches were well-controlled with conservative measures; (2) Dr. Thoits' opinion is contradicted by his contemporaneous treatment notes; and (3)

Plaintiff's reported activities were inconsistent with Dr. Thoits' opinion. In sum, the ALJ articulated good reasons, supported by substantial evidence, for affording less than controlling weight to Dr. Thoits' opinion.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  August 11, 2011                              /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge